UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GARY BLACKBURN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No: 2:10 CV 87 |
| | ) |
| MENARD, INC., | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on defendant Menard, Inc.'s ("defendant") motion for summary judgment on plaintiff Gary Blackburn's complaint. For the following reasons, defendant's motion is granted in part and denied in part.

**I.    Facts and Procedural Background**

On January 24, 2008, plaintiff stopped at defendant's Merrillville location on his way to work. (DE # 52-1 at 1-2.) It had snowed earlier that day (*id.* at 1), but was not snowing when plaintiff pulled into the parking lot (*id.* at 2). Plaintiff arrived at defendant's store at some time before 1:00 p.m., which was when plaintiff's shift at work was scheduled to start. (DE # 50-1 at 6-7.) There was snow on the sidewalk as plaintiff entered the store, but plaintiff does not remember seeing any ice and did not have any problems as he was walking into the store. (DE # 52-1 at 5.)

Plaintiff remained in the store for approximately ten to fifteen minutes. (DE # 50-1 at 8.) As he prepared to exit the store, plaintiff looked out of the glass windows at the front of the store and noticed that it had started snowing and raining outside. (DE # 52-

1 at 3-4.) After exiting the store and taking two or three steps onto the sidewalk, plaintiff slipped on what he believed to be ice and injured himself. (DE # 50-1 at 12-13, 16.) Plaintiff was then carried inside the store by someone he believes was one of the store's employees. (DE # 52-1 at 7.) After his fall, plaintiff noticed that there were two of defendant's employees shoveling the sidewalk. (DE # 52 at 2; DE # 52-1 at 13.) As he was carried into the store, plaintiff heard one of the employees that had been shoveling say "we should have started at the other door, I guess." (DE # 52 at 2; DE # 52-1 at 10.)

The current manager of defendant's Merrillville store, Michael O'Dore, testified that store employees will remove snow on the store's sidewalks, apply salt if needed, and make sure that the entrances and exits are clear at all times. (DE # 52-2 at 2.) If an employee sees snow or ice, it is their job to make sure that the snow or ice is removed. (*Id.*) Inspections for snow and ice are not done on any sort of schedule (i.e. every hour, every half hour, etc.), but instead it is the responsibility of each of defendant's employees to constantly be on the lookout for the presence of snow and ice. (*Id.* at 3, 5.) Additionally, O'Dore testified that two snow removal trucks had been at defendant's Merrillville store on January 24, 2008, from 1:30 a.m. to 3:00 a.m.. (*Id.* at 4.)

Plaintiff sued defendant for negligence in state court (DE # 1), and the suit was subsequently removed to this court by defendant. (DE # 2.) Defendant has now moved for summary judgment. (DE # 48.)

**II.     Legal Standard**

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

**III.      Analysis**

To prevail on a claim of negligence under Indiana law, "a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007)**.** Plaintiff's negligence suit in this case is based on premises liability. "The law is well established that a person entering upon the land of another comes upon the land as an invitee, a licensee, or a trespasser." *Christmas v. Kindred Nursing Ctrs. Ltd. P'ship,* 952 N.E.2d 872, 878 (Ind. Ct. App. 2011).

"As 'a person who [was] invited to enter or remain on the land for a purpose directly or indirectly connected with business dealings with the possessor of the land,'" plaintiff became a business invitee when he arrived at defendant's retail store. *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012) (quoting *Burrell v. Meads*, 569 N.E.2d 637, 642 (Ind. 1991)). "A landowner owes the highest duty of care to an invitee, that duty being to exercise reasonable care for the invitee's protection while he is on the premises." *Christmas*, 952 N.E.2d at 880.

Indiana courts look to the Second Restatement of Torts in determining the duty owed to an invitee. Section 343 states:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Hale v. SS Liquors, Inc.*, 956 N.E.2d 1189, 1192 (Ind. Ct. App. 2011) (quoting RESTATEMENT (SECOND) OF TORTS § 343 (1965)). All three conditions set out on Section 343 must be met for a defendant to be liable under a premises liability theory of negligence. *Christmas*, 952 N.E.2d at 880.

Plaintiff contends that defendant was negligent by failing to warn customers about the slippery and icy conditions on the store's entryway sidewalk and by failing to

5

keep the entryway sidewalk free of dangerous and slippery conditions. (DE # 1 at 2.) Defendant argues that it is entitled to summary judgment because plaintiff has failed to identify the defect that caused his fall. (DE # 49 at 5-7.) Defendant also argues that it is entitled to summary judgment because Indiana law provides business owners a reasonable amount of time to remedy dangerous conditions, and defendant did not have a sufficient amount of time in this case to remedy the alleged accumulation of ice before plaintiff slipped. (*Id.* at 8-10.) The court will address each argument in turn.

**A. Failure To Identify Defect That Caused Fall**

First, defendant argues that plaintiff's suit must be dismissed because he cannot identify the defect which caused his fall. (DE # 49 at 5.) Specifically, defendant argues that it is entitled to summary judgment because plaintiff assumed that ice caused his fall, despite the fact that plaintiff admitted that he did not see any ice prior to, during, or after his fall. (*Id.*) In response, plaintiff argues that he clearly identified ice as the cause of his fall. (DE # 52 at 5.)

Defendant bases this argument on two cases, *Midwest Commerce Banking Co. v. Livings,* 608 N.E.2d 1010 (Ind. Ct. App. 1993) and *Hayden v. Paragon Steakhouse,* 731 N.E.2d 456, 457 (Ind. Ct. App. 2000). In *Livings*, the plaintiff sued the defendant, a bank, after falling in the bank's lobby. 608 N.E.2d at 1011-12. Although the plaintiff had several theories on what caused her fall, the appellate court reversed the trial court's denial of the bank's motion for summary judgment because the plaintiff could only speculate as to what actually caused her fall, and did not come forward with any

6

evidence as to how or why she fell. *Id.* at 1012-13. The court concluded that "negligence cannot be inferred from the mere fact of an accident." *Id.* at 1013.

Similarly, in *Hayden*, the plaintiff sued the defendant, a restaurant, after slipping and falling in the defendant's parking lot. 731 N.E.2d at 457. The appellate court affirmed the district court's grant of summary judgment in the defendant's favor after concluding that the plaintiff had failed to present any evidence regarding how or why he fell. *Id.* at 458-59. Specifically, despite the plaintiff's allegations in the complaint that he slipped on ice, the plaintiff's own testimony revealed that he did not know whether there was any ice or snow in the area that he slipped. *Id.* at 458. The court quoted from the plaintiff's deposition:

> Q: Do you have any other facts that support your belief that this was what you call black ice?
>
> A: None other than the fact that my feet went out from underneath me and I went up in the air and fell down.
>
> Q: Do you have any idea what—strike that. Do you have have [sic] any idea what your feet slipped in that caused you to fall?
>
> A: Are you calling for speculation on my part?
>
> Q: I'm just asking if you know. And I'm not asking you to speculate.
>
> A: I don't know for sure.

*Id.*

Defendant analogizes the following excerpt from plaintiff's testimony to the testimony from the plaintiff in *Hayden*:

> Q: Okay. What did you slip on?
> A: Ice.
> Q: Okay. Did you see the ice at any time?
> A: No.
> Q: Then how do you know it was ice?
> A: Because – how – I don't know – how do you know?
> Q: Did you feel the ice?
> A: Well because my foot went out from underneath me.
> Q: Okay.
> A: And I'm assuming that was what it was. It was ice underneath the snow.
> Q: Okay. At any time did you see the ice?
> A: No.
> Q: Okay. Did you – at any time did you feel the ice?
> A: When I slipped.
> Q: Okay. You're talking about feeling it with your shoe?
> A: Yeah. Feeling it give way underneath me.

(DE # 56-6; DE # 50-1 at 16-17.) Defendant argues that like the plaintiff in *Hayden*, plaintiff can only speculate as to what caused his injury. (DE # 56 at 6.) In response, plaintiff argues that he has clearly identified ice as the cause of his fall because he testified that he felt the ice when he slipped. (DE # 52 at 9.) Plaintiff also argues that *Hayden* is distinguishable because in *Hayden*, unlike in this case, the plaintiff had not seen any snow in the area and did not know if there was ice in the area. *Hayden*, 731 N.E.2d at 457.

Although plaintiff did not see any ice before or after his fall, he did testify that he felt ice with his shoe as his foot began to slip. (DE # 50-1 at 16-17.) Moreover, plaintiff testified that there was snow on the ground and that there was a mix of rain and snow falling as he left the store. (DE # 52-1 at 1-5.) Thus, the facts of this case are markedly different from the facts of *Hayden*, where the plaintiff saw neither ice nor snow, and the

only evidence that the fall was caused by ice was the fact that the plaintiff, without seeing either snow or ice, believed that ice had caused his fall. The court believes that the evidence presented in this case is sufficient to create a material fact on the issue of causation. *See Barsz v. Max Shapiro, Inc.*, 600 N.E.2d 151, 153 (Ind. Ct. App. 1992); *see also Slater v. Ridinger Enters., Inc.*, No. 28A05–1104–CT–207, 2012 WL 601028, at *1-3 (Ind. Ct. App. Feb. 24, 2012) (unpublished). Therefore, defendant has failed to meet its initial burden on this issue.

### B. Reasonable Time to Remove Ice

Defendant's second argument is that it is entitled to summary judgment because Indiana Law provides business owners a reasonable amount of time to remedy dangerous conditions, and defendant did not have a sufficient amount of time in this case to remedy the accumulation of ice before plaintiff slipped. (DE # 49 at 8-10.)

Defendant bases this argument on two cases. In *Orth v. Smedley*, the plaintiff, who lived in a rental property owned by the defendants, exited her apartment at approximately 6:00 a.m. and crossed a parking lot where ice had accumulated. 378 N.E.2d 20, 21 (Ind. Ct. App. 1978). As she crossed the parking lot, the plaintiff slipped on ice and broke her arm. *Id.* at 91-92. It had rained from midnight until 6:00 a.m. on the date of plaintiff's fall. *Id.* at 91. The Indiana Court of Appeals noted, in dictum, that the storm that caused the ice had happened in the middle of the night and that "[a]n ordinary prudent person would not stand guard over the premises constantly." *Id.* at 24.

Defendant also directs the court to *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813 (7th Cir. 2006). In that case, the plaintiff stopped at the defendant's hotel late one night in order to avoid driving during a winter storm. *Id.* at 815. When plaintiff arrived at the hotel, the ramp between the lobby door and the parking lot was ice-free. *Id.* After arriving at the hotel, and using the ramp to enter the lobby, the plaintiff spent approximately fifteen minutes inside reserving his room. *Id.* at 815, 817. When the plaintiff left the lobby, ice had formed on the ramp between the lobby door and the parking lot, and the plaintiff slipped on the ice and injured himself. *Id.* at 815. The district court determined that the defendant could not be held liable under the facts of that case, and the Seventh Circuit agreed:

> With respect to winter storms, in particular, Indiana does not require immediate removal of snow or ice. *Hammond,* 262 Ind. at 88, 311 N.E.2d 821. Although *Rossow v. Jones,* 404 N.E.2d 12 (Ind. App. 1980), held that a week is too long to wait, action within shorter times (such as at daybreak during a storm, or soon after a storm ends) has been treated as reasonable diligence. See *Orth v. Smedley,* 177 Ind. App. 90, 378 N.E.2d 20, 23 (1978) (dictum). [Defendant] did not wait a week, or even overnight. As [the plaintiff] tells the tale, the path was clear and dry when he entered and slippery (because of an ongoing ice storm) when he left the motel's office about 15 minutes later. Only a duty of continuous monitoring and clearing during a winter storm would make an owner liable under these circumstances, and there is no such duty in Indiana.

*Id.* at 817.

Defendant argues that *Rising-Moore* controls the outcome of the case at hand. Specifically, defendant argues that "the precipitation began while the plaintiff was inside the store for only ten (10) or fifteen (15) minutes. . . . [A]s in *Rising-Moore*, [defendant] did not have sufficient time to remedy any alleged accumulation of ice, and

10

is entitled to summary judgment on the plaintiff's claim." (DE # 49 at 9-10.) In response, plaintiff argues that *Rising-Moore* does not apply here because defendant had actual knowledge of the snow and ice conditions. (DE # 52 at 7.) Plaintiff also points out that there was snow on the entryway when he walked in, and also that defendant's employees were removing snow from the entryway when plaintiff slipped. (*Id.*)

According to plaintiff's deposition testimony, the precipitation that caused his fall occurred during the ten to fifteen minute period that he was inside the store. Plaintiff testified that it had snowed prior to his arrival at the store, but was not snowing at the time he entered the store:

> Q: Do you remember what the weather was like [on the day of the fall]?
> * * *
> A: It snowed earlier that day.
> Q: On [the day of the fall]?
> A: Yeah. And when I went in the store, it started snowing again.
> Q: Okay. Was it snowing as you were walking in the store.
> A: I don't think it was. But – there was snow on the ground, I think.
> Q: Okay. From the night before or the morning of?
> A: That morning.
> Q: Okay. So there was snow the morning of?
> A: Right.
> Q: It was not snowing at the time you pulled into [defendant's store]?
> A: No.
> Q: Nor when you exited your vehicle?
> A: Not that I recall, no.
> Q: Nor when you walked from your vehicle into the store?
> A: Right.

(DE # 52-1 at 1-2.) Plaintiff then testified that it began snowing as he was inside the store:

> Q: Do you remember what the weather was like [on the day of the fall]?
> * * *

>A: It snowed earlier that day.
>Q: On [the day of the fall]?
>A: Yeah. And when I went in the store, it started snowing again.
>* * *
>Q: And you believe that it may have been snowing [as you were exiting the store]?
>A: Yes.
>Q: Do you know for sure?
>A: No.[1]
>Q: Okay. Do you have an independent recollection of seeing precipitation?
>A: Yes. I think so.
>Q: Okay. Now was it snow?
>A: Yes.

(*Id.* at 1-2, 4.) Finally, plaintiff testified that the ice that he slipped on when he exited the store was on the sidewalk as a result of the precipitation that started after he entered the store:

>Q: And you believe that it may have been snowing [as you were exiting the store]?
>A: Yes.
>Q: Do you know for sure?
>A: No.
>Q: Okay. Do you have an independent recollection of seeing precipitation?
>A: Yes. I think so.
>Q: Okay. Now was it snow?
>A: Yes.
>Q: Okay.
>A: It was – there was snow and rain together.
>Q: Okay. A mix?
>A: *There was a mix. It was right at the temperature of snow and rain. And that's what caused the problem, because it rained. And it froze the sidewalk.*
>Q: Okay.

---

[1] Although plaintiff's answer here indicates some ambiguity as to whether it was snowing as he was exiting the store, plaintiff has not disputed the paragraph of defendant's statement of material facts that states that it began snowing while plaintiff was in the store. (*See* DE # 49 at 2; DE # 52 at 2-3.) The court will therefore treat that fact as undisputed.

> A: And then the snow landed on top of it.
> Q: Okay. And this precipitation wasn't going on at the time you entered the store?
> A: No. There was just snow on the ground.
> Q: Okay. Now was there snow on the sidewalk as you were walking up onto the sidewalk to enter the store?
> A: Yes.
> Q: Okay. Was there ice on the sidewalk as you were walking into the store?
> A: Going in I didn't have no problem. [sic]
> Q: Okay. But was there anything on the ground?
> A: I don't remember, uhn-uhn, don't remember.

(*Id.* at 4-5 (emphasis added)). Thus, despite the fact that some snow had accumulated on the store's entryway prior to plaintiff's arrival, plaintiff testified that the precipitation that caused his fall occurred after he had arrived at the store.

The question, therefore, becomes whether defendant was negligent for not removing the ice on the entryway that plaintiff slipped on which had accumulated during the ten to fifteen minute time period that plaintiff was in defendant's store. The court believes that the Seventh Circuit resolved the answer to this question in *Rising-Moore*: "Only a duty of continuous monitoring and clearing during a winter storm would make an owner liable under these circumstances, and there is no such duty in Indiana." 435 F.3d at 817; *see also Hammond v. Allegretti*, 311 N.E.2d 821, 826 (Ind. 1974) ("We must emphasize that we are not advocating the imposition of strict liability in this case, nor are we suggesting that there be an inflexible rule requiring that a business inviter immediately remove the natural accumulation of ice and snow from his business premises."), *disapproved on other grounds by Burrell v. Meads*, 569 N.E.2d 637, 641-42 (Ind. 1991).

Plaintiff tries to distinguish *Rising-Moore* by arguing that in this case, unlike in *Rising-Moore*, defendant had actual notice of the presence of snow and ice on the entryway. (DE # 52 at 7.) Plaintiff supports this argument by pointing out that two of defendant's employees were shoveling snow at the time of plaintiff's fall. The court questions whether the fact that those employees were shoveling snow establishes that defendant was aware that *ice* had accumulated during the ten to fifteen minute period that plaintiff was in the store. But even assuming that defendant knew that ice had begun to accumulate, under Indiana law, defendant was afforded a reasonable opportunity to remove the ice before it could be held liable. Otherwise, defendant would be under "a duty of continuous monitoring and clearing[.]" *Rising-Moore*, 435 F.3d at 817. Imposing liability on defendant for failing to clear the ice during the ten to fifteen minute period that plaintiff was in the store (DE # 50-1 at 8) would be tantamount to requiring continuous monitoring and clearing during a winter storm, and there is no such duty in Indiana. *Rising-Moore*, 435 F.3d at 817; *Allegretti*, 311 N.E.2d at 89; *cf. Bell v. Grandville Cooperative, Inc.*, 950 N.E.2d 747, 751-52 (Ind. Ct. App. 2011) (concluding *Rising-Moore* inapplicable when there was "established pattern" of ice forming in area where plaintiff fell several days before plaintiff's fall).

The result in this case might be different if plaintiff had presented some evidence that the snow which had accumulated prior to his arrival at the store had anything to do with his fall. But plaintiff has not done that. The only evidence plaintiff presented regarding the snow that was already on the entryway when he arrived at the store was

14

that he did not have any problem crossing over it on his way into the store. (DE # 52-1 at 5.) And, according to plaintiff's own testimony, his fall was caused by the precipitation that occurred after he had already entered the store. (*Id.* at 4-5.)

Plaintiff also appears to contend that defendant is liable because defendant's employees are instructed to "constantly" check for snow and ice to make sure that snow and ice are removed "at all times." (DE # 52 at 3.) Plaintiff supports this contention with the deposition testimony of Michael O'Dore, the current manager of defendant's Merrillville location. (DE # 52-2.) As defendant correctly points out, however (DE # 56 at 4), O'Dore started working at the Merrillville store in 2011, approximately three years after the events in this case took place. (DE # 52-2 at 1.) It is not clear from the attached portions of O'Dore's deposition testimony that he is testifying about policies in place at defendant's Merrillville location at the time of plaintiff's fall. Even if O'Dore was testifying about the policies that were in place at the time of plaintiff's fall, however, the evidence in this case does not indicate that those policies had been violated at the time that plaintiff fell. Although plaintiff did slip and fall, he also testified that there were two of defendant's employees working on snow removal at the time of the fall.[2] (DE # 52 at 2.)

---

[2] Plaintiff also points out that defendant has failed to present evidence that the two employees that were shoveling snow started shoveling as a result of the precipitation that began falling while plaintiff was in defendant's store. (DE # 52 at 7.) The court fails to see how this supports plaintiff's position. Even if the employees had started shoveling prior to the start of the precipitation that caused plaintiff's fall, the employees were still shoveling immediately after that precipitation began.

Thus, defendant has met its initial burden of showing that there are no genuine issues of material fact for trial regarding plaintiff's failure to clear theory, and plaintiff has not put forth evidence indicating that a genuine issue of material fact requiring trial exists. In sum, "no duty was imposed on [defendant] to know and ameliorate the risk associated with an accumulation of ice on its entrance ramp over the course of a [ten to fifteen minute] time period so as to support a finding of negligence under the common law of Indiana as applied to premises liability, and [d]efendant did not breach its duty of care owed to [p]laintiff." *Rising–Moore v. Red Roof Inns, Inc.*, 368 F. Supp. 2d 867, 875 (S.D. Ind. 2005).

Although defendant is entitled to summary judgment on plaintiff's failure to clear theory, defendant has failed to address whether *Rising-Moore* also applies to plaintiff's failure to warn theory, and it is not apparent that the reasoning of that case would also apply to a failure to warn theory. Additionally, defendant has not made any other arguments regarding that theory. Therefore, defendant is not entitled to summary judgment on plaintiff's failure to warn theory.

Finally, defendant submitted the affidavit and report of expert witness Dr. Gary Hutter in support of its motion for summary judgment. (DE # 50-3 at 2.) Plaintiff has moved to strike Dr. Hutter's report and prohibit him from testifying. (DE # 56.) The court did not consider or rely on either Dr. Hutter's affidavit or report in reaching its conclusion on defendant's second argument, the only argument the court resolved in defendant's favor. Plaintiff's motion will therefore be denied as moot.

IV.     Conclusion

For the foregoing reasons, defendant Menard, Inc.'s motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. (DE # 48.) Additionally, plaintiff's motion to strike (DE # 56) is **DENIED AS MOOT**.

Defendant is granted leave to file a motion for summary judgment on plaintiff's failure to warn negligence theory. If defendant chooses to do this, it must file the motion within 45 days of the date of this order. Any response from plaintiff is due 30 days from the date that the motion is filed, and any reply from defendant is due 10 days after the response is filed.

**SO ORDERED.**

Date: November 25, 2013

s/James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT